# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| LEE E. DAVIS, JR. | : | NO. 09-343 |
| DuBOIS, J. | | NOVEMBER 4, 2009 |

## M E M O R A N D U M

## I. INTRODUCTION

This case concerns allegations of a long-term scheme to defraud, in which defendant Lee E. Davis, Jr. ("Davis"), purportedly victimized a number of individuals and entities by taking cash in return for fraudulent surety bonds and certificates of workers' compensation insurance over a period of five-and-a-half years. Presently before the Court are two motions *in limine* – the Government's Motion *in Limine* to Admit Evidence of Crimes and Acts as Part of the Charged Scheme to Defraud, or, in the Alternative, to Admit Evidence of Similar Crimes and Acts Pursuant to Rule 404(b) of the Federal Rules of Evidence and Defendant's Motion *in Limine* to Exclude Evidence Under Rule 403 of Federal Rules of Evidence – and responses, addressing the admissibility of several types of evidence relating to the charged scheme. Also before the Court are two motions filed by defendant – Defendant's Motion for Production of Evidence and Defendant's Request to Subpoena Documents Under Rule 17 of the Federal Rules of Criminal Procedure and Motion *in Limine* to Admit Impeachment Evidence for Government Witnesses – and a letter from the government, dated October 9, 2009, responding to these motions.

In its letter of October 9, 2009, the government states that it is "in the process of providing the defendant with any documents or information not already disclosed to which he is legally entitled." As a result, the Court denies Defendant's Motion for Production of Evidence as

moot.  The government also states in its letter that it does not object to defendant's request for Rule 17 subpoenas, with the caveat that it opposes certain uses of the subpoenaed evidence at trial.  The Court therefore grants Defendant's Request to Subpoena Documents Under Rule 17 of the Federal Rules of Criminal Procedure, by agreement of the parties.  The Court denies defendant's related Motion *in Limine* to Admit Impeachment Evidence for Government Witnesses on the present state of the record, without prejudice to the right of defendant to seek reconsideration if warranted by evidence or argument presented at trial.

The remainder of this memorandum will address evidentiary issues raised in the motions *in limine* filed by the government and defendant.  For the reasons set forth below, the Government's Motion *in Limine* is denied as moot.  On the present state of the record, Defendant's Motion *in Limine* is granted in part and denied in part.

## II. BACKGROUND

On May 21, 2009, the government filed a six-count Indictment charging Davis with five counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341, relating to a scheme to defraud occurring between June 2003 and January 2009.  Specifically, the Indictment charged that, as part of the scheme, Davis: (1) solicited and obtained premium payments from clients for surety bonds and workers' compensation insurance; (2) kept the money for his own use and did not purchase the bonds or insurance as agreed; and (3) provided his clients with fraudulent surety bonds, certificates of insurance, and powers of attorney.  (Indict. ¶¶ 5(b)-5(d).)  The Indictment further charged that after Davis was confronted by some of his victims and informed that his activities were the subject of an investigation, he made various misrepresentations to investigators and victims regarding his fraudulent conduct,

including a promise to one victim that he would "repay the fraudulently obtained insurance premiums if the victim would keep the offer a private matter and not take any legal action against the defendant." (Indict. ¶¶ 6(a)-6(e).) The Indictment detailed five specific wire transfers and a single specific instance of mail fraud covered by the six counts, providing dates and money amounts for each of the six transactions. (Indict. ¶ 7.)

Subsequently, on October 22, 2009, the government filed an eight-count Superceding Indictment charging Davis with the above-described counts of wire and mail fraud and two additional counts of wire fraud, in violation of 18 U.S.C. § 1343. (Sup. Indict. ¶ 7.) Paragraph Five of the Superceding Indictment – under the section entitled "Manner and Means" – expands its pleading regarding the charged scheme to defraud, adding the following two allegations under 5(e) and 5(f): (1) that defendant "fraudulently obtained money from a client, for whom he actually purchased surety bonds, by falsely telling the client that the insurer required collateral in addition to the premium, and kept the money for his own use," and (2) that "while employed at an insurance agency, [defendant] instructed a client to wire a portion of its insurance premium deposit to an account controlled by him, did not forward the money to the insurer, and kept the money for his own use." (Sup. Indict. ¶¶ 5(e)-5(f).) Aside from these two allegations and the additional two counts of wire fraud (with corresponding date and transmission information), the Superceding Indictment is identical to the original Indictment.

### III. DISCUSSION

*A.    Government's Motion in Limine*

On September 16, 2009, the government filed a motion *in limine* in which it sought to admit evidence of the same two instances of fraud covered in Paragraphs 5(e) and 5(f) of the

Superceding Indictment. The filing of the Superceding Indictment moots the issues presented in the motion. The acts which were the subject of the motion are now charged as part of defendant's scheme to defraud. Such evidence is admissible. Thus, the Government's Motion *in Limine* is denied as moot.

B.    *Defendant's Motion in Limine*

On September 29, 2009, defendant filed a motion *in limine*, asking the Court to preclude admission of testimony concerning two separate issues: (1) a 2007 settlement agreement entered into by defendant and a victim entity named Regency Oaks, addressing defendant's liability for fraud charged in the Indictment, and (2) the issuance of a fraudulent bond to Joe Wilson in 2004. The defendant argues that this evidence is highly prejudicial and should be excluded under Federal Rule of Evidence 403, and in the case of the settlement agreement, also under Federal Rule of Evidence 408.

The Court concludes that, although the Regency Oaks settlement agreement is offered for a proper purpose under Rule 408, the agreement's probative value is substantially outweighed by the danger of unfair prejudice under Rule 403. The Wilson bond, on the other hand, is intrinsic evidence of the scheme to defraud charged in the Superceding Indictment. As a result, the Court determines that the settlement agreement is inadmissible pursuant to Rule 403, and that the Wilson bond is admissible as direct proof of defendant's scheme.[1]

(1)    Regency Oaks Settlement Agreement

Defendant argues in his motion *in limine* for exclusion of a settlement agreement between

---

[1] The Court decides defendant's motion despite the intervening Superceding Indictment, as nothing contained in the Superceding Indictment alters the Court's ruling as to the admissibility of either the Regency Oaks settlement agreement or the Joe Wilson bond.

4

defendant and victim entity Regency Oaks. The document, entitled "Payment Agreement," addresses workers' compensation insurance claims made against Regency Oaks in the absence of insurance coverage, which had been promised by defendant but was not actually secured. As part of the settlement, defendant agreed to compensate Regency Oaks for attorneys' fees, medical bills, and other statutory penalties in connection with claims for injuries allegedly suffered by employees of Regency Oaks and its clients. In the prefatory clauses laid out at the beginning of the agreement, defendant makes several admissions regarding his liability in the matter.[2] Defendant argues that the agreement is inadmissible to prove his guilt under Rule 408, and that to the extent the agreement is offered by the government for some permissible purpose, it should be "excluded as unfairly prejudicial under Rule 403." (Def. Mot. at 4.)

The admissibility of settlement agreements is the focus of Federal Rule of Evidence 408. Prior to 2006, the circuit courts were split regarding whether Rule 408 prohibited the admission of settlement agreements as proof of criminal conduct in criminal trials. The Second, Sixth, and Seventh Circuits held that Rule 408 only applied to civil proceedings and did not bar the introduction of settlement agreements as evidence of guilt in criminal trials. See United States v. Logan, 250 F.3d 350, 367 (6th Cir. 2001); Manko v. United States, 87 F.3d 50, 54-55 (2d Cir. 1996); United States v. Prewitt, 34 F.3d 436, 439 (7th Cir. 1994). The Fifth, Tenth, and Eleventh

---

[2] The following admissions of liability are contained in the first page of the Regency Oaks Payment Agreement:
"WHEREAS, Regency made certain payments for insurance premiums to Davis and PIM to secure the issuance of worker's compensation insurance policies and certificates of coverage for the time period of December 15, 2005 through January 18, 2007;
WHEREAS, Regency was led to believe, and relied upon documents provided to it by Davis and PIM in believing that coverage had been obtained for various states, including but not limited to New York, Pennsylvania, California and Georgia;
WHEREAS, Davis and PIM did not obtain worker's compensation insurance coverage for Regency in states including but not limited to New York, Pennsylvania, California and Georgia for the time period of December 15, 2005 through January 187, 2007." (Regency Oaks Payment Agreement at 1.)

5

Circuits held that Rule 408 applied in both civil and criminal proceedings. See United States v. Arias, 431 F.3d 1327 (11th Cir. 2005); United States v. Bailey, 327 F.3d 1131 (10th Cir. 2003); United States v. Hays, 872 F.2d 582, 588-89 (5th Cir. 1989).

All of the above cited cases antedate the 2006 amendment to Rule 408. In that year, the rule was amended, in part to address the division of the circuits on the applicability of Rule 408 to criminal cases. Rule 408 currently reads as follows:

> Rule 408. Compromise and Offers to Compromise
> (a) Prohibited uses. – Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
> (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or statements made in compromise negotiations regarding the claim, <u>except when offered in a criminal case</u> and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
> (b) Permitted uses. – This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408 (emphasis added). The 2006 Advisory Committee Note supports the application of the rule in both civil and criminal cases, commenting that, "statements made during compromise negotiations of other disputed claims are not admissible in subsequent criminal litigation, when offered to prove liability for, invalidity of, or amount of those claims." 2006 Advisory Committee Note.

As far as this Court is aware, no federal court in the Third Circuit has specifically addressed Rule 408 in the context of a criminal case. See United States v. Luparella, 153 Fed.

Appx. 830, 833 (3d Cir. 2005) ("[W]e need not decide whether evidence of the civil settlement would otherwise be inadmissible under Rule 408 [in a criminal case].")[3]; Carmichael v. Government of the Virgin Islands, No. CRIM.A.2002/164, 2004 WL 3222756, at *6 n.8 (D.V.I. Nov. 29, 2004) ("We need not resolve here whether Rule 408 generally applies in criminal cases."). However, the Court is persuaded by both the Advisory Committee Note and subsequent precedent interpreting the statute and concludes that Rule 408 is applicable to criminal cases.

Several courts, including the Seventh Circuit, which had previously applied Rule 408 only in civil cases, have since held that the amended rule applies in both civil and criminal proceedings. See United States v. Roti, 484 F.3d 934, 935-37 (7th Cir. 2007); United States v. Park, No. CR 08-00220 MMM, 2008 WL 2338298, at *3-*5 (C.D. Cal. May 27, 2008); People of the Virgin Islands v. Brewley, No. ST-06-CR-402, 2007 WL 4698606, at *5 (V.I. Super. Nov. 16, 2007). These courts reason that the Advisory Committee Note demonstrated an intent to extend operation of the rule to the criminal context. In addition, the text of Rule 408, as amended, permits the admission of settlement agreements in criminal proceedings where compromise negotiations were conducted with government agencies, as opposed to private parties. Fed. R. Evid. 408(a)(2). The creation of a partial exemption in the criminal context would be nonsensical unless the rule pertains to both civil and criminal cases. Roti, 484 F.3d 934, 935-37 (7th Cir. 2007); Park, 2008 WL 2338298, at *3-*5. Finally, the "plain language of Rule 1101(b) renders each of the Federal Rules of Evidence generally applicable" to criminal proceedings. Arias, 431 F.3d 1327, 1336-37; Park, 2008 WL 2338298, at *4.

Under Rule 408, the Regency Oaks settlement agreement is inadmissible to the extent

---

[3] This unpublished opinion is not precedential pursuant to § 5.7 of the Internal Operating Procedures of the Third Circuit.

that the government offers it as proof of liability for a claim – or to put the rule's language in criminal law terms – as proof of defendant's guilt. Fed. R. Evid. 408(a). Since the agreement was entered into between private parties, it does not fall into the limited exception enunciated in 408(a)(2) involving compromise negotiations with a public agency. Fed. R. Evid. 408(a)(2). However, if the government seeks to introduce evidence of the agreement for a purpose other than to establish defendant's guilt, such evidence may be admissible under 408(b). Section (b) provides a non-exhaustive list of possible permissible uses: (1) to prove a witness's bias or prejudice; (2) to negate a contention of undue delay; and (3) to prove an effort to obstruct a criminal investigation or prosecution. Fed. R. Evid. 408(b); see United States v. Hauert, 40 F.3d 197, 200 (7th Cir. 1994); United States v. Hays, 872 F.2d 582, 588-89 (5th Cir. 1989); United States v. Wilford, 710 F.2d 439, 451 (8th Cir. 1983).

      The government argues that it seeks to admit the Regency Oaks settlement agreement for two permitted purposes under the statute: (1) to show lack of mistake, in that defendant frequently attempted to blame others for his failure to purchase insurance or bonds with premiums paid by victims, and (2) to show that defendant's motive for defrauding subsequent clients was, in part, to obtain money to repay Regency Oaks under the agreement. (Gov't Resp. at 3.) Settlement agreements offered for these purposes may be received into evidence pursuant to Rule 408. See Croskey v. BMW of North America, Inc., 532 F.3d 511, 519 (6th Cir. 2008); Johnson v. Hugo's Skateway, 974 F.2d 1408, 1413 (4th Cir. 1992); Hauert, 40 F.3d at 200. However, even if the settlement agreement is offered for a proper purpose under Rule 408, the evidence is still subject to a balancing analysis under Rule 403. See Williams v. Chevron U.S.A., Inc., 875 F.2d 501, 504 (5th Cir. 1989); Manko v. United States, No. 95 Civ.

8

1611(KMW), 1998 WL 391129, at *3 (S.D.N.Y. July 13, 1998), aff'd, 63 Fed. Appx. 570 (2d Cir. 2003).

Rule 403 provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury..." Fed. R. Evid. 403. "In making this determination, the trial judge must appraise the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988). The drafters of Rule 403 "intended that the trial judge be given a very substantial discretion in balancing probative value on the one hand and unfair prejudice on the other." United States v. Long, 574 F.2d 761, 767 (3d Cir. 1978).

The Court concludes that, on the present state of the record, the probative value of the Regency Oaks agreement is substantially outweighed by the danger of unfair prejudice. This ruling is based on the risk that a jury will view the agreement as a confession of liability and guilt, regardless of the purpose for which the evidence is received. As the Fifth Circuit observed in United States v. Hays, "the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound. It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendant[] had done nothing wrong, [he] would not have paid the money back." 872 F.2d at 589. Measured against the government's need for the challenged evidence – particularly in light of the other evidence of the scheme to defraud – this potential prejudicial effect weighs heavily. Scarfo, 850 F.2d at 1019. Even a carefully crafted limiting instruction might not eliminate the prejudicial effect of the agreement. Thus, the defendant's Motion *in Limine* is granted as to the Regency Oaks settlement agreement,

and the government is precluded from presenting evidence of the agreement at trial.

(2) Joe Wilson Bond

In his motion, defendant also seeks to exclude evidence of a fraudulent surety bond which defendant allegedly issued to Joe Wilson in return for $125,000 collateral in October 2004. According to defendant, such evidence "would only be admissible under Rule 404(b) of the Federal Rules of Evidence" and it may only be admitted for "non-propensity purposes such as motive, intent, identity, or absence of mistake." (Def. Mot. at 4.) Defendant further argues that even if evidence relating to the Wilson bond is admissible under Rule 404(b), it must be excluded under Rule 403, due to its highly prejudicial nature. (Def. Mot. at 4-5.)

Federal Rule of Evidence 404(b) prohibits evidence of "extrinsic acts" or "other acts" that is intended to show a defendant's propensity to commit crimes or to adversely reflect upon defendant's character. Government of Virgin Islands v. Harris, 938 F.2d 401, 419 (3d Cir. 1991); Huddleston v. United States, 485 U.S. 681, 685 (1988).[4] However, the rule does not apply to evidence of acts which are "intrinsic" to the offense charged. United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002). While most circuit courts view evidence as intrinsic if it is "inextricably intertwined" with the charged offense, the Third Circuit has explicitly expressed no view on whether "other acts" that are "inextricably intertwined" with the events underlying the charge are "intrinsic" to the offense charged and thus exempt from Rule 404(b). Cross, 308 F.3d at 320. Instead, the Third Circuit has held that acts are intrinsic when they "directly prove" the charged offense. Id.; United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999). Thus, when

---

[4] Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident..." Fed. R. Evid. 404(b).

10

specified acts constitute direct proof of a scheme to defraud, those acts are considered to be intrinsic to the charged scheme and are not subject to analysis under Rule 404(b). United States v. Benjamin, 125 F. Appx. 438, 440-41 (3d Cir. 2005).[5]

The Court rejects defendant's argument that the Wilson bond is extrinsic evidence to be analyzed under Rule 404(b), and concludes that the proffered evidence "directly proves" the charged scheme to defraud. The Superceding Indictment charges a scheme in which defendant allegedly kept premium payments obtained from clients in exchange for fraudulent surety bonds and certificates of insurance. The nature of the Wilson bond and the circumstances surrounding its issuance mirror these allegations – according to the government, defendant solicited a payment from Wilson in exchange for a fraudulent bond and kept the money for his own use. (Gov't Resp. at 5.) Furthermore, the timing of the transaction places it squarely within the period covered by the scheme to defraud – the Superceding Indictment alleges that defendant engaged in the scheme between June 2003 and January 2009, and the Wilson bond was allegedly issued in October 2004. (Gov't Resp. at 5.) That the Superceding Indictment contains no mail fraud or wire fraud count covering the Wilson bond does not make it inadmissible, because the evidence of the fraudulent bond is intrinsic to the charged scheme. See United States v. Pharis, 298 F.3d 228, 233-34 (3d Cir. 2002); Cross, 308 F.3d at 319-20.

Moreover, the Superceding Indictment references one aspect of the Wilson bond transaction. Paragraph 6(e) of the Superceding Indictment – under the section entitled "Manner and Means" – details actions defendant took to prevent Wilson from pursuing criminal charges against him. Specifically, Paragraph 6(e) states that defendant promised to repay Wilson's

---

[5] This unpublished opinion is not precedential pursuant to § 5.7 of the Internal Operating Procedures of the Third Circuit, but the Court finds it instructive.

premiums if Wilson agreed to keep the matter private and not "take any legal action against defendant." (Sup. Indict. ¶ 6(e); Gov't Resp. at 6.) These allegations, contained in the Superceding Indictment itself, further support the Court's conclusion that evidence of the Wilson bond is intrinsic to the charged scheme to defraud.[6]

Nor is the probative value of the evidence substantially outweighed by the danger of unfair prejudice under Rule 403, as defendant argues. On this issue, the Third Circuit has opined, "the fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403." Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655, 670 (3d Cir. 2002). Moreover, even where intrinsic evidence is highly prejudicial to a defendant, a court does not have discretion to exclude it because "it is proof of the ultimate issue in the case." United States v. Hoffecker, 530 F.3d 137, 189 (3d Cir. 2008). The Court concludes that the Wilson bond is admissible as direct proof of the charged scheme to defraud, and that the evidence is not barred under Rule 403.

## IV. CONCLUSION

For the forgoing reasons, Defendant's Motion *in Limine* to Exclude Evidence Under Rule 403 of Federal Rules of Evidence is granted with respect to evidence of the Regency Oaks settlement agreement and denied with respect to evidence of the Joe Wilson bond. The Court's ruling on the Regency Oaks settlement agreement is without prejudice to the government's right to seek reconsideration if warranted by evidence or argument presented at trial.

Defendant's Motion for Production of Evidence is denied as moot. Defendant's Request

---

[6] It is not clear whether Counts 3 or 7 – the two counts of wire fraud added in the Superceding Indictment – refer to the Wilson bond, but that is not relevant to the decision on defendant's motion *in limine*. That motion is decided on the assumption that the newly added counts do not involve the Wilson bond. If the newly added counts charge crimes relating to the Wilson bond, the issue of whether the evidence is extrinsic rather than intrinsic is mooted.

to Subpoena Documents Under Rule 17 of the Federal Rules of Criminal Procedure is granted, by agreement of the parties. Defendant's related Motion *in Limine* to Admit Impeachment Evidence for Government Witnesses is denied, without prejudice to the right of defendant to seek reconsideration if warranted by evidence or argument presented at trial.

Finally, because the Superceding Indictment specifically charges the two acts addressed in the Government's Motion *in Limine*, filed before the filing of the Superceding Indictment, that motion is denied as moot.

An appropriate order follows.